**In re TED A. PETRAS FURS, INC., Debtor.**

**Ian J. GAZES as Trustee of the Estate of Ted A. Petras Furs, Inc., Plaintiff,**

**v.**

**Stravos KESIKRODIS and Anna Kesikrodis, a/k/a Stravos Kesikrodis and Anna Kesikiadis, Defendants.**

**Ian J. GAZES as Trustee of the Estate of Ted A. Petras Furs, Inc., Plaintiff,**

**v.**

**Evangolis LAGOS and Theodora Lagos, Defendants.**

Bankruptcy No. 190–10760–260.
Adv. Nos. 194–1048–260, 194–1058–260.

United States Bankruptcy Court,
E.D. New York.

Sept. 16, 1994.

Ian J. Gazes, Trustee, New York City.

George Poulos, Astoria, NY, for defendants.

### DECISION ON MOTIONS TO DISMISS ADVERSARY PROCEEDINGS

CONRAD B. DUBERSTEIN, Chief Judge.

These proceedings, two of fourteen adversary proceedings commenced on February

15, 1994 by the Chapter 7 Trustee in bankruptcy of Ted A. Petras Furs, Inc. ("Debtor"), were filed to recover alleged preferential transfers pursuant to section 547 of the Bankruptcy Code ("Code") and Rule 7001(1) of the Federal Rules of Bankruptcy Procedure ("Rule") to avoid allegedly preferential payments made by the Debtor to Stravos and Anna Kesikrodis (Adversary Proceeding No. 194–1048–260) and to Evangolis Lagos and Theodora Lagos (Adversary Proceeding No. 194–1058–260), (hereinafter collectively the "Defendants").

The instant matters before this Court are the Defendants' motions to dismiss the complaints based upon the grounds that (i) the actions are time-barred because they were commenced past the two-year statute of limitations pursuant to section 546(a) of the Code; (ii) that process was insufficient because, in each proceeding, Plaintiff served the two named defendants with only one copy of the summons and complaint, and (iii) such service was improperly effectuated by certified mail rather than first-class mail. In opposition to Defendants' motions to dismiss, Ian J. Gazes, as trustee ("Plaintiff") contends that the complaints were timely filed in accordance with section 546(a); that service of process by certified mail is consistent with Rule 7004(a) and (b) and that process served in each proceeding was sufficient as to both named defendants.[1]

After considering all of the facts and reviewing the authorities pertinent to the issues raised by the complaints, the motions of the Defendants to dismiss the complaints are hereby denied.

### FACTS

The Debtor was engaged in business as a fur manufacturer and wholesaler with offices at 405 Union Avenue, Westbury, New York. On March 2, 1990, the Debtor filed a petition for relief with this Court under chapter 11 of the Code. According to the schedules of

---

1. Inasmuch as the instant motions to dismiss concern virtually identical issues, this Court will address and decide both motions simultaneously.

assets and liabilities filed with this Court, the Debtor at that time was indebted to general unsecured creditors in the approximate amount of $2,784,305.18. On January 22, 1992, this Court entered an order converting this case to one under chapter 7 and appointing Plaintiff as interim trustee of the Debtor's estate. On February 26, 1992 the first meeting of creditors in this converted case was held, and inasmuch as the creditors did not exercise their right to vote for a trustee, Plaintiff became the permanent trustee pursuant to section 702(d) of the Code which provides that if a trustee is not elected "then the interim trustee shall serve as trustee in the case."

On February 15, 1994, Plaintiff commenced the underlying actions seeking to avoid certain preferential transfers and alleging, with respect to Adversary Proceeding No. 194–1048–260, that the Debtor listed Defendants Stravos Kesikrodis and Anna Kesikrodis as creditors due to disputed loans payable totalling $55,418.13 and that within ninety days of filing its chapter 11 petition, the Debtor made payments to the aforesaid Defendants of two checks totalling $29,151.13. Plaintiff effectuated process by serving one summons and complaint upon Stravos Kesikrodis and Anna Kesikrodis by certified mail, return receipt requested, on February 22, 1994. Certificate of Service of Lorena Funes dated February 22, 1994.

With respect to Adversary Proceeding No. 194–1058–260, Plaintiff alleges that the Debtor listed Defendants Evangolis Lagos and Theodora Lagos as creditors due to a disputed note in the amount of $20,000.00 and that within ninety days of filing its chapter 11 petition, the Debtor made a payment to the aforesaid Defendants of one check in the sum of $20,000.00. Plaintiff effectuated process by serving one summons and complaint upon Evangolis Lagos and Theodora Lagos by cer-

tified mail, return receipt requested, on February 23, 1994. Certificate of Service of Lorena Funes dated February 24, 1994.

Defendants assert that these adversary proceedings are barred by the two-year statute of limitations governing adversary proceedings contained in section 546 of the Code,[2] contending that the limitations period began to run at the time the Debtor filed its original chapter 11 petition on March 2, 1990, or in the alternative, that the limitations period began to run when Plaintiff was appointed interim trustee on January 22, 1992. Thus, Defendants conclude that because Plaintiff did not commence these adversary proceedings within the two-year period, they are time-barred and must be dismissed.

However, the Plaintiff contends that the statutory limitation for a trustee avoidance action begins to run from the trustee's election or designation as a permanent trustee pursuant to section 702 of the Code, in this case, on February 26, 1992.

Secondly, the Defendants allege that under the Bankruptcy Rules, service of process was improper, and therefore, their right to due process was violated. They argue that service of process by certified mail, return receipt requested, is not in accord with Rule 7004(b), which provides for the service of process in adversary proceedings. Defendants further allege that process was improper in these proceedings because they were served with only one summons and complaint notwithstanding that in each proceeding two defendants are named, and that with respect to Adversary Proceeding No. 194–1048–260, a neighbor of the Defendants therein signed the return receipt card without their authorization.

Plaintiff contends that service of process by certified mail is consistent with Rules 7004(a) and (b)[3] and that the process served

---

2. Section 546(a) provides as follows:
(a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—
   (1) two years after the appointment of a trustee under section 702, 1104, 1163, 1302, or 1202 of this title; or
   (2) the time the case is closed or dismissed.

3. Bankruptcy Rule 7004(a) provides as follows:

(a) Summons; Service; Proof of Service. Rule 4(a), (b), (c)(2)(C)(i), (d), (e) and (g)–(j) F.R.Civ.P. applies in adversary proceedings. Personal service pursuant to Rule 4(d) F.R.Civ.P. may be made by any person not less than 18 years of age who is not a party and the summons may be delivered by the clerk to any such person.

Bankruptcy Rule 7004(b) provides, in pertinent part, as follows:

in each proceeding was sufficient as to both named Defendants, who are married to each other, share the same mailing address, made the same loans together, received the same alleged preferential payments and are represented by the same counsel.

## DISCUSSION

### A. Statute of Limitations

Defendants first contend that the two-year limitation period of section 546(a) began to run at the time the Debtor filed its original chapter 11 petition, i.e., March 2, 1990, and thus Plaintiff's commencement of the instant adversary proceedings on February 15, 1994 is time-barred. To support their proposition, the Defendants rely heavily upon the following four Circuit Court cases which have addressed this issue: *U.S. Brass & Copper Co. v. Caplan (In re Century Brass Products, Inc.)*, 22 F.3d 37 (2d Cir.1994); *Construction Mgt. Services. v. Manufacturers Hanover Trust (In re Coastal Group Inc.)*, 13 F.3d 81 (3d Cir.1994); *Upgrade Corp. v. Gov't Technology Services (In re Softwaire Centre International, Inc.)*, 994 F.2d 682 (9th Cir. 1993); and *Zilkha Energy Co. v. Leighton*, 920 F.2d 1520 (10th Cir.1990).

However, each of the Circuit Court cases cited by the Defendants are factually distinguishable from the instant case, and thus are not controlling herein. Indeed, in each case the threshold issue raised by the appeal was whether the limitations period of section 546(a)(1) applied to a debtor-in-possession or only to a trustee and, moreover, the Circuit Courts did not address the issue herein of what effect section 546(a) has on a subsequently appointed trustee.

Each of the foregoing cases held that a chapter 11 debtor-in-possession, pursuant to section 1107(a) which makes a debtor-in-pos-

session the functional equivalent of an appointed trustee, was subject to the two-year statute of limitations set forth in section 546(a).

In *In re Century Brass Products, Inc., supra,* the debtor commenced its chapter 11 case on March 15, 1985 remaining as a debtor-in-possession with no bankruptcy trustee appointed for the duration of the case. In September 1989, the bankruptcy court confirmed a chapter 11 liquidating plan and appointed a plan administrator. One year later, the plan administrator commenced an action seeking to avoid a preferential transfer with the subject creditor moving to dismiss arguing that the action was time-barred. The bankruptcy court denied the creditor's motion and although the district court affirmed, the Second Circuit reversed holding that "for the DIP, the limitations period begins when the debtor files its petition and becomes a DIP under § 1101." *Id.* at 22 F.3d at 40.

Equally distinguishable are the remaining three Circuit Court cases cited by Defendants. Similar to *In re Century Brass, supra,* and unlike the facts herein, each case involved a chapter 11 debtor-in-possession remaining in possession of its assets and in which no trustee was appointed. Here, however, the Debtor originally filed a petition in chapter 11 on March 2, 1990; thereafter the case was converted to chapter 7; an interim trustee was appointed and a permanent trustee designated on February 26, 1992.

In fact, three of the four Circuit Courts explicitly limited their holdings to the facts at issue. The Second Circuit stated that "since no trustee was ever appointed ... we need not decide whether such an appointment might revive a claim that the [debtor-in-possession] itself would have been barred

(b) Service by First Class Mail. In addition to the methods of service authorized by Rule 4(c)(2)(C)(i) and (d) F.R.Civ.P., service may be made within the United States by first class mail postage prepaid as follows:

(1) Upon an individual other than an infant or incompetent, by mailing a copy of the summons and complaint to the individual's dwelling house or usual place of abode or to the place where the individual regularly conducts a business or profession.

This Court notes that notwithstanding an amendment to Rule 4(c)(2)(C)(i) and (d) on December 1, 1993, Bankruptcy Rule 7004(g) provides that such amendment will not affect service in bankruptcy cases and proceedings and that "[t]he subdivisions of Rule 4 F.R.Civ.P. .. shall be the subdivisions of Rule 4 F.R.Civ.P. in effect on January 1, 1990."

from bringing." *In re Century Brass,* 22 F.3d at 41. The Third and Tenth Circuits similarly posited, to wit: *In re Coastal Group,* 13 F.3d at 86 n. 7 ("We do not need to reach the question of whether a trustee appointed more than two years after the Chapter 11 case began may commence adversary proceedings."); *Zilkha,* 920 F.2d at 1524 n. 11 ("We take no position on whether a subsequent appointment of a trustee in a chapter 11 case would change the analysis. While we perceive that to be a distinguishable circumstance requiring a different analysis, we leave the issue for a case in which that situation arises.")

The Ninth Circuit in *In re Softwaire Centre International, supra,* did not declare similar warnings of its limited holding, but stated that it agreed and followed *Zilkha* as the basis for its decision. *In re Softwaire Centre,* 994 F.2d at 683.

Indeed, if this Court applied the foregoing Circuit Court holdings to the instant proceedings, the section 546(a)(1) limitations period would start "running prior to the appointment of the Chapter 7 trustee in [this] converted case, a result obviously not intended or specified by the Code." *Gillman v. Swire Pacific Holdings, Inc. (In re D–Mart Services, Inc.),* 138 B.R. 985, 989 n. 4 (Bankr. D.Utah 1992). Further, this Court agrees with the bankruptcy court in *Reese v. First Tennessee Bank, N.A. (In re Brook Meade Health Care Center),* 165 B.R. 195 (Bankr. M.D.Tenn.1994), which stated that it was unnecessary to decide whether section 546(a)(1) applies to a debtor-in-possession where a trustee is subsequently appointed, because "nothing in the language of § 546(a)(1) suggests that the limitation on a debtor-in-possession would be 'tacked' or 'added' to calculate the limitation with respect to a subsequently appointed trustee." *Id.* at 197.

Thus, because the Circuit Court cases cited by Defendants, including the binding Second Circuit holding in *In re Century Brass Products, supra,* are clearly distinguishable from the instant case, this Court does not find them to compel the decision of these matters.

*Limitation Period of Section 546(a) is Reset Upon Trustee Appointment*

■ As noted above, although three of the four Circuit Courts reserved decision on the issue in this particular case of what affect a subsequent appointment of a trustee has on the section 546(a)(1) limitation period, the majority of the courts who have ruled on this issue have concluded that in such circumstances the limitations period is reset to start running upon the trustee's appointment. This Court is in agreement with those courts who have so ruled.

Most instructive is the recent case of *Hirsch v. Harper (In re Colonial Realty),* 168 B.R. 512 (Bankr.D.Conn.1994) in which a Connecticut bankruptcy court, similarly bound by the Second Circuit's ruling in *In re Century Brass, supra,* and recognizing that the Circuit Courts had reserved decision on whether a subsequent appointment of a trustee in a case originally in chapter 11 would affect the section 546(a)(1) limitation period, concluded that "the appointment of a trustee upon conversion of the case to Chapter 7 resets the two-year period provided by § 546(a)(1) by extending the period's starting date to the trustee's appointment date." *In re Colonial Realty,* 168 B.R. at 519.

This Court follows the majority line of cases holding that section 546(a)'s limitations period runs anew upon appointment of a trustee[4] for the following reasons.

■ While this Court is mindful of the policy that statutes of limitations are statutes

---

**4.** *See Gorman v. Adolfo (In re Racusins, Inc.),* 169 B.R. 100 (Bankr.M.D.Pa.1994) (holding where a chapter 11 case is converted to one under chapter 7 and chapter 7 trustee appointed, the two-year limitations period runs from the trustee's appointment); *Daff v. Regal Recovery (In re Continental Capital & Credit),* 158 B.R. 828, 830 (Bankr.C.D.Cal.1993) (same); *Roberts v. Seneca Petroleum Co. (In re Wikel Mfg.),* 153 B.R. 183, 185 (Bankr.N.D.Ohio 1993) (same); *In re Ajayem Lumber Corp.,* 145 B.R. 813, 817 (Bankr.S.D.N.Y. 1992) (same); *In re D–Mart Services,* 138 B.R. at 989 (same); *Edleman v. Alvester (Matter of Silver Mill Frozen Foods),* 23 B.R. 179, 181 (Bankr. W.D.Mich.1982) (same). *See also,* 4 *Collier on Bankruptcy* ¶ 546.02[2] (15th Ed.1994) (If a trustee is appointed in a case under Chapter 11 or in a case converted from Chapter 11, he will have two years from the date of his appointment to commence actions pursuant to section 546(a)).

of repose, *U.S. v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 357, 62 L.Ed.2d 259 (1979), it is also mindful of the "countervailing policy of enabling bankruptcy trustees to perform their jobs." *Martino v. Assco Associates (In re SSS Enterprises)*, 145 B.R. 915, 919 (Bankr.N.D.Ill.1992). In furtherance of that policy, the apparent reason for providing trustees two years within which to assert avoidance actions "is to ensure that the trustee has ample time to investigate any potential claims and causes of action for the estate." *A.M. Mancuso v. Continental Bank National Association Chicago (In re Topcor)*, 132 B.R. 119, 124–5 (Bankr.N.D.Tex. 1991).

In applying that policy to the facts herein, if the section 546(a)(1) period commenced when the petition was originally filed on March 2, 1990, Plaintiff would have had only days from the time he was permanently appointed on February 26, 1992[5] to bring avoidance actions on behalf of the estate. Such a situation would hardly comport with this Court's standing as a court of equity, and surely not a situation that Congress intended to allow occur when section 546 was penned.

Thus, this Court holds that section 546(a)(1) runs anew in the event a trustee is subsequently appointed from a case originally involving a debtor-in-possession.[6]

*Appointment of the Permanent Trustee Triggers Section 546(a)*

■ The holding by this Court that the two-year statute of limitations contained in section 546(a)(1) begins to run anew upon a trustee's appointment, does not automatically suggest that instant avoidance actions were timely commenced. This Court must further decide whether section 546(a)(1) begins to run upon the date the interim trustee was appointed, as the Defendants maintain, or upon the appointment of the permanent trustee, as Plaintiff argues. This Court agrees with Plaintiff.

On January 22, 1992, Plaintiff was appointed as the interim Chapter 7 trustee. On February 26, 1992, the first meeting of creditors required by section 341 of the Code was conducted and concluded. Because the Debtor's creditors chose not to elect a permanent trustee, Plaintiff automatically became the permanent Chapter 7 trustee on that date, pursuant to section 702(d) of the Code which provides that "if a trustee is not elected under this section, then the interim trustee shall serve as trustee in this case."

This precise issue was addressed and resolved by this Court in *McColley v. Jacobs (In re North American Dealer Group)*, 62 B.R. 423 (Bankr.E.D.N.Y.1986). In holding that "it is the appointment of the permanent trustee which triggers the Section 546 statute of limitations" *id.* at 426, this Court adopted the following reasoning of the bankruptcy court in *Salomon v. Pan American World Airways (In re Black & Geddes)*, 35 B.R. 827 (Bankr.S.D.N.Y.1983):

> That it is the appointment of the permanent trustee that is the operative date is reasonable in light of the caretaker nature of the interim trustee's position. The interim trustee is to preserve the estate until a trustee can be selected. This interim role is not intended to require the detailed array of professional assistance and investigation that a trustee's position requires.

*In re North American Dealer Group*, 62 B.R. at 426 (quoting *In re Black & Geddes*, 35 B.R. 827 (Bankr.S.D.N.Y.1983)).

---

5. The issue of whether section 546(a)'s limitation period begins to run upon the appointment of the interim trustee or upon the election or appointment of the permanent trustee is discussed *infra*.

6. This Court does not decide the issue of whether the conversion of a case from chapter 11 to chapter 7 and the subsequent appointment of a chapter 7 trustee, where there was a prior chapter 11 trustee, runs the § 546(a)(1) period anew. However, the majority of courts who have decided this issue has found that it does. *See Hovis v. United Screen Printers (In re Elkay Industries)*, 167 B.R. 404, 409 (D.S.C.1994); *McCuskey v. FBS Leasing Corp. (In re Rose Way, Inc.)*, 160 B.R. 811, 813 (S.D.Iowa 1993); *Amazing Enterprises v. Jobin (In re M & L Business Machines)*, 153 B.R. 308, 311 (D.Colo.1993); *In re SSS Enterprises*, 145 B.R. at 919; *Strell v. Weston (In re Sandra Cotton, Inc.)*, No. CIV–88–1013E, 1989 WL 98851, at *4 (W.D.N.Y. Aug. 18, 1989); *Stuart v. Pingree (In re Afco Development)*, 65 B.R. 781, 786 (Bankr.D.Utah 1986).

This Court now reiterates that it is the appointment of the permanent trustee which triggers the section 546 section of limitations. Plaintiff was appointed permanent trustee on February 26, 1992. The applicable two-year statute of limitations contained in section 546(a)(1) began to run from this date. This preferential transfer action was commenced on February 15, 1994. Clearly the action was commenced within two years of the appointment of the permanent trustee and thus, is not time barred.

### B. *Service of Process*

■ Defendants next argue that these adversary proceedings should be dismissed because of the allegedly improper service of process used by Plaintiff in both the method of service and sufficiency of process.

Service of a summons and complaint commencing an adversary proceeding is governed by Rule 7004. Rule 7004(b)(1) provides that individuals may be served at their home or business by first class mail. Pursuant to this Rule, Plaintiff, after commencing these actions by filing the respective summonses and complaints with this Court on February 15, 1994, mailed one copy of the summons and complaint to the two defendants named in each proceeding by certified mail, return receipt requested.

Defendants first contend that Plaintiff's use of certified mail as a means of effectuating service of process violated Rule 7004(b). They argue that the requirement of first-class mail in 7004(b) is strict, and that no alternate form of service may be used under the Bankruptcy Rules.

This argument is indeed a curious one, for in disputes over the use of first class versus certified mail for service of process, it is usually the defendant who has asked that service of process be procured by the higher standard of certified mail. *See Weigner v. City of New York*, 852 F.2d 646, 650 (2d Cir.1988); *Cayuga Indian Nation v. Carey*, 89 F.R.D. 627, 632 (N.D.N.Y.1981). Nevertheless, this Court holds that the use of

certified mail for service of process does not violate Rule 7004(b).

Prior to 1976, Rule 704(c)[7] required a signed receipt in order for service by mail to be valid. As Defendants correctly note, Rule 704(c) was amended in 1976 to dispense with the requirement of a signed receipt. The Advisory Committee Note to the 1976 Amendment explained:

> Subdivision (c). First Class mail postage prepaid is substituted for mail requiring a signed receipt as the authorized mode of making service by mail in the United States. Experience with the provision requiring a signed receipt has been unsatisfactory. Although the defendant's correct address is used for mailing, the defendant is often unavailable to the delivering postman, either to sign or to refuse delivery.

Thus, the Rule requiring a signed receipt for valid service of process was amended because it was deemed unduly harsh on the parties serving process, not upon those being served. Yet here, Plaintiff took it upon himself to go beyond the standards required by Rule 7004(b) and serve by certified mail. This Court refuses to penalize Plaintiff for taking this extra step by dismissing these adversary proceedings when the only substantial difference between certified and first class mail is the requirement of a signature indicating successful delivery.

Furthermore, this Court does not wish to discourage those persons who wish in the future to use certified mail as a form of serving process. It has been found by the Second Circuit that when certified mail, return receipt requested, has been used to serve process, the signed receipt by the person being served provided virtually conclusive evidence that the notice was received and that the delivery and request for a signature of a return receipt alerted the property owner that the letter contains something of more than routine interest. *See Weigner, supra* at 852 F.2d 650.

This Court concludes that service by certified mail complies with Rule 7004(b). *See*

---

**7.** Bankruptcy Rule 7004(b) supplanted Rule of Bankruptcy Procedure 704(c). However, the method of service provided under Rule 704(c)

and Rule 7004(b) is identical, i.e., first class mail with no requirement of an acknowledgment of receipt.

*International Coins & Currency v. Andrasko* (*In re International Coins & Currency*), 22 B.R. 121, 122 (Bankr.D.Vt.1982) (holding that service by certified mail, return receipt requested was in accord with Rule 704(c) under which service was properly made by first class mail).

Defendants further contend that the particular service by certified mail was improper because they allege that they never signed the return receipt card. This assertion, if true, is nevertheless immaterial because the Bankruptcy Rules do not state that a signature of the defendant or debtor is needed to serve process by mail.

Defendants cite *Longmeadow Motor Co. v. Heinz* (*In re Heinz*), 131 B.R. 38 (Bankr. D.Md.1991), for the proposition that the use of certified mail for service of process violates Rule 7004(b). However, the Defendants have misapprehended the holding in *In re Heinz*. In *Heinz*, the plaintiff attempted service on the defendants in a variety of methods, including certified mail and private process server, all without success within the 120 day-limit imposed by Rule 4(j) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7004(a). The bankruptcy court dismissed the action because service was ultimately unsuccessful and not because certified mail was used by plaintiff. Thus *In re Heinz* is not applicable herein.

■ Defendants' contention that the service requirement in Rule 7004(b) is strictly limited to first-class mail is rejected. Defendants do not claim that they did not receive process and were thus unaware of these adversary proceedings. Rather, they claim that service by certified mail is technically defective and, therefore, the proceedings are invalid. Courts have been reluctant to read excessive strictness into the notice provisions of the Bankruptcy Rules if service was "reasonably calculated" to reach the defendant. This Court agrees with such indisposition. *See Jeffries v. Browning* (*In re Reserves Development Corp.*), 78 B.R. 951, 959 (W.D.Mo.1986) (service by Federal Express sufficient although technically defective); *In re D.H. Overmyer, Co.*, 40 B.R. 990, 995

(S.D.N.Y.1984) (service by overnight express satisfied due process).

The Defendants next argue that process was inadequate because the named Defendants in each proceeding, although husband and wife and sharing the same mailing address, received only one summons and complaint. This Court disagrees.

■ As enunciated by the Supreme Court in the landmark case of *Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950), the notice that is required by due process is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* See *Cossio v. Cate* (*In re Cossio*), 163 B.R. 150, 156 (9th Cir. BAP 1994) (due process concerns of Bankruptcy Rule 7004(b) is satisfied by *Mullane* standard). Furthermore, "the standards for service on individuals and corporations are to be liberally construed to further the purpose of finding personal jurisdiction in cases in which the party has received actual notice." *In re Outlet Department Stores*, 49 B.R. 536, 540 (Bankr.S.D.N.Y. 1985) (citing *Grammenos v. Lemos*, 457 F.2d 1067, 1070 (2d Cir.1972)).

■ This Court finds that the process served by Plaintiff was sufficient, regardless of the fact that in each proceeding, the Defendants were served with one summons and complaint between them. The summons and complaint were actually received by both defendants at their residence. Surely, one summons and complaint mailed to their residence was "notice reasonably calculated" to give the Defendants, a husband and wife, actual notice of these proceedings. Thus, the Defendants' rights to due process were satisfied. Defendants cannot and do not argue that they did not receive the summons and complaint, nor can they argue that they had no time or notice to file an answer or raise objections, as evinced by these motions to dismiss. See *In re Paolino*, 49 B.R. 834, 836 (Bankr.E.D.Pa.1985) (finding that service of involuntary petition on husband-debtor at his place of business was reasonably calculated

to inform the wife-debtor who had some connection with the husband's place of business).

Accordingly, this Court holds that proper service was made by Plaintiff in both of these adversary proceedings.

### CONCLUSION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(f).

2. Defendants' motions to dismiss are denied in their entirety.

3. The parties are directed to go forward with these adversary proceedings so as to enable this Court to determine whether the subject payments made by Debtor to Defendants are preferential and thereby avoidable by the trustee pursuant to section 547 of the Code.